**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christine L. Walter,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>    Defendant. | No. CV-09-1016-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Plaintiff Christine L. Walter's appeal of the Social Security Administration's (the "Administration") decision to deny benefits. (Dkt. # 1.) For the following reasons, the Court affirms.

## BACKGROUND

### I. Procedural Background

On June 14, 2005, Plaintiff applied for disability insurance benefits, alleging a disability onset date of March 4, 2005, based on a blood clotting disorder and problems with her leg, hip, and back. (R. at 15, 47–51, 67, 98–99.) Plaintiff's application was denied both initially and upon reconsideration. (R. at 35–36.) She then timely requested a hearing, and Administrative Law Judge Ronald C. Dickinson ("ALJ") held a hearing on January 29, 2008. (R. at 374.) On March 17, 2008, the ALJ applied the five-step sequential evaluation process found in 20 C.F.R. § 404.1520 and concluded that Plaintiff was not disabled because her

residual functional capacity ("RFC") allowed her to return to her past work. (R. at 12–21.) The Appeals Council denied her request for review on April 10, 2009, making the ALJ's decision the final decision for review. (R. at 2–4.) Plaintiff then filed suit in this Court. (Dkt. # 1.)

## II.  Factual Background

Plaintiff, who was fifty-four years old in May 2005 at the time of her alleged onset of disability and fifty-seven at the time of the ALJ's decision, previously worked as an accountant, clerical office worker, customer service clerk, and receptionist, among other positions. (R. at 88, 380, 383–86.) Prior to May 2005, Plaintiff had undergone back, foot, and leg surgery. (R. at 142, 308.) She had also been diagnosed with fibromyalgia, developed deep vein thrombosis, and received treatment for blood clotting in her leg. (R. at 201–08, 304, 308.)

In May 2005, Plaintiff visited Dr. Alice Guice, a treating physician, who diagnosed Plaintiff with fibromyalgia. Dr. Guice's records, however, did not list any tenderness points, as is typically required for a medical diagnosis of fibromyalgia; nor did Dr. Guice prescribe treatment for fibromyalgia. (R. at 195–97.) In August of that year, Plaintiff saw Dr. Guice for a knee injury, but an x-ray was normal and showed no arthritic changes or joint effusion. (R. at 198–99.)

In September 2005, Dr. Keith Cunningham, a non-treating physician, examined Plaintiff, who reported receiving treatment for a "terrible burning pain" as a result of fibromyalgia. (R. at 166–68.) Dr. Cunningham further noted that Plaintiff reported arthritic feet, difficulty walking and standing and that Plaintiff has a history of deep vein thrombosis. (*Id.*) Dr. Cunningham, however, observed that Plaintiff did not use any assistive devices to walk and performed various daily activities like housework and driving. (R. at 168.) Plaintiff also could walk to and from the examination room, mount and dismount the examination table, stand on each leg, walk with a normal gait, display normal range of motion in her cervical spine and had a "relatively well preserved" range of motion in her upper back and shoulders. (*Id.*) Plaintiff also displayed several tenderness points, but she did not have

muscle spasms or inflammation. (*Id.*) And while Plaintiff had multi-level degenerative disc changes and remote mild superior end-plate compressions of the vertebrae, Dr. Cunningham opined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, sit, stand, walk, frequently balance and reach, and occasionally climb, stoop, kneel, and crouch, but never crawl. (R. at 170–72.)

In January 2006, Plaintiff again visited Dr. Guice regarding arthritis and knee pain. (R. at 192.) Dr. Guice provided a letter stating that Plaintiff had fibromyalgia and severe osteoarthritis, which prevented her from working and performing many daily activities. (R. at 317.) However, in May, Dr. William Holland, a consultative physician, examined Plaintiff, who told him that treatment helped her joint pain and fibromyalgia somewhat. (R. at 142.) Dr. Holland also noted that Plaintiff used no assistive devices, was alert and responsive, could get on and off the examination table, had a full range of motion in her cervical spine and joints, could bend at the waist to ninety degrees, and performed a negative straight leg test. (R. at 143.) At the same time, Plaintiff could not squat and walked poorly. (*Id.*) Unlike Dr. Guice, Dr. Holland opined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand for four hours, sit for six to eight hours, occasionally climb and balance, but never stoop, kneel, crouch, or crawl. (R. at 145–47.)

Plaintiff visited Dr. Aaron Boor for treatment in August 2006, reporting a history of fibromyalgia. (R. at 312–16.) Dr. Boor originally diagnosed Plaintiff with chronic fatigue syndrome. (R. at 318.) Dr. Boor later completed a Physical Residual Functional Capacity Questionnaire, concluding that Plaintiff had "chronic fatigue syndrome/fibromyalgia," with symptoms of pain, weakness, and fatigue. (R. at 312–16.) Dr. Boor opined that Plaintiff could perform low-stress work if long standing, sitting, and walking were not required. (*Id.*) In November, Plaintiff saw Dr. Boor for depression, at which time Dr. Boor also prescribed medication for Plaintiff's pain. (R. at 321.)

In January 2007, Dr. Virkam Kapur performed a consultative examination, during which Plaintiff asserted that she had been unable to work because of fibromyalgia, lower back pain, and leg pain. (R. at 129.) Dr. Kapur's examination revealed tenderness in the

lower back, shoulder, neck, legs, and wrists, as well as a reduced range of motion in her back and positive straight leg raise tests. (R. at 130–31.) However, the examination also revealed no apparent distress, along with normal gait, normal range of motion in the shoulders, and the absence of muscle spasms. (*Id.*) Based on these findings, Dr. Kapur concluded that there was "some evidence" of fibromyalgia, lower back pain, hypertension, and obesity. (R. at 133–35.) Dr. Kapur further found that Plaintiff could frequently lift ten pounds, stand and/or walk for between two and six hours in an eight-hour day, sit for less than six hours in an eight-hour day, frequently crawl, and occasionally stoop or climb, and never kneel or crouch. (*Id.*)

In May 2007, Plaintiff again visited Dr. Boor because of pain and weakness in her neck, shoulder, and arm. (R. at 327.) Dr. Boor noted, however, that Plaintiff had a normal spine, range of motion, and muscle strength and tone. (*Id.*) Dr. Boor diagnosed Plaintiff with a neck sprain and strain, but instructed Plaintiff to exercise her back lightly each day. (*Id.*) Plaintiff continued complaining of pain, however, and Dr. Boor prescribed a muscle relaxant two weeks later. (R. at 328.)

Mr. Brady Nelson, a physician's assistant, then treated Plaintiff for fatigue, headaches, stiffness, memory lapses, numbness, and sleep disturbances. (R. at 334–35.) Mr. Nelson concluded that Plaintiff had fibromyalgia, specifically noting that she had pain in seventeen of the eighteen fibromyalgia trigger points. (R. at 367–71.) Based on these findings, Mr. Nelson stated that Plaintiff was incapable of even low stress jobs. Specifically, Mr. Nelson found that Plaintiff could rarely lift less than ten pounds, could walk half a block, sit for thirty minutes, stand for fifteen minutes, and sit, stand, or walk for less than two hours total out of an eight-hour day; he further concluded that Plaintiff could never twist, scoop, crouch, squat, or climb ladders. (*Id.*)

Plaintiff also presented evidence of her daily activities and symptoms. In August 2005, Plaintiff reported that she could stand for one our at a time and walk fifteen minutes. (R. at 80–87.) She also dusted, did the laundry, ironed, folded clothes, cooked, sewed, read, used the computer for an hour at a time, shopped, drove, and went on social outings a couple

of times per week. (*Id.*) At the hearing, Plaintiff further testified that treatment and naps helped her fibromyalgia. (R. at 389–90.) She also estimated that she could walk only half a block, sit for thirty minutes at a time, but could climb stairs slowly. (R. at 399.) She said her husband vacuumed and scrubbed the floors, but that she did the laundry with the help of a rolling cart. (R. at 391–92.)

**STANDARD OF REVIEW**

The Court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A reviewing federal court addresses only the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may "set aside a denial of benefits only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

The Court may not "substitute [its] own judgment for that of the ALJ." *Id.* The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). At the same time, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). The Court also may not "affirm the ALJ's . . . decision based on evidence that the ALJ did not discuss." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (emphasizing the fundamental rule of administrative law that a reviewing court "must judge the propriety of [administrative] action solely by the grounds invoked by the agency" and

1  stating that if "those grounds are inadequate or improper, the court is powerless to affirm the
2  administrative action"). Even if the ALJ erred, however, "[a] decision of the ALJ will not
3  be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.
4  2005).

**DISCUSSION**

Whether a claimant is disabled is determined using a five-step evaluation process. A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity, (2) that her disability is severe, and either (3) that her impairment meets or equals one of the specific impairments provided in the Listing of Impairments found at 20 C.F.R. pt. 404, subpt. P, app'x 1, or (4) that her RFC precludes her from performing her past work. 20 C.F.R. § 404.1520(a)(4) (2009). Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. *Id.*

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 4, 2005, the alleged disability onset date. (R. at 17.) At step two, the ALJ concluded that Plaintiff has the following impairments "which are severe when they are considered in combination: possible fibromyalgia, possible chronic fatigue syndrome, morbid obesity, esophageal reflux, chronic lower back pain following an injury to her left lower extremity in 1998, osteoarthritis, and pain in the muscles and joints." (R. at 17.) At step three, the ALJ found that Plaintiff's impairments do not meet or equal any of the listed impairments. (R. at 18.) The ALJ then held that Plaintiff had the RFC to perform sedentary work with a sit-stand option as long as she was not required to crawl, crouch, climb squat kneel, or use of her lower extremities for pushing and pulling. (R. at 18.) Accordingly, the ALJ concluded at step four that Plaintiff could perform her past relevant work as an accountant, clerical office worker, customer service clerk, and/or receptionist. (R. at 21.)

**I.     The ALJ Properly Assessed Plaintiff's Impairments.**

Plaintiff contends that the ALJ failed to fully recognize and assess several of Plaintiff's alleged impairments: fibromyalgia, blood clots, and lower back pain. Although

- 6 -

it is unclear, Plaintiff appears to be challenging the ALJ's step two analysis regarding Plaintiff's severe impairments and his step four analysis with respect to her ability to perform past relevant work. At step two, the claimant bears the burden of showing that she has a severe impairment, *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987), meaning the impairment "significantly limit[s] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508. At step four, she bears the burden of showing that her RFC precludes her from performing her past work. 20 C.F.R. § 404.1520(a)(4) (2009). The ALJ's findings with respect to steps two and four is supported by substantial evidence.

### A. Fibromyalgia

Plaintiff first argues that the ALJ overlooked Plaintiff's fibromyalgia. The ALJ, however, did not err. First, while the ALJ did not find fibromyalgia disabling, the ALJ addressed fibromyalgia at step two, noting that Plaintiff's "possible fibromyalgia" was "severe when . . . considered in combination[]" with other impairments. (R. at 17.) Additionally, to the extent Plaintiff argues that she has more than "possible" fibromyalgia or that her fibromyalgia causes serious symptoms, the ALJ cited substantial evidence for his determination that Plaintiff is not disabled because of fibromyalgia alone. The ALJ explained that none of the treating or examining physicians made a properly-supported diagnosis of fibromyalgia. Instead, any such diagnoses were based largely on Plaintiff's subjective descriptions. (R. at 18–19); *see Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999) (holding that claimant did not have a severe impairment where the record included no concrete diagnosis of fibromyalgia).

Plaintiff cites Dr. Kapur and Dr. Cunningham, both of whom reported fibromyalgia. Neither physician, however, made findings that meet even Plaintiff's definition of a fibromyalgia diagnosis. (R. at 130, 168.) While both noted medical findings of tenderness at various trigger points, neither specifically identified tenderness at eleven of eighteen

trigger points. (*Id.*); *see Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (holding that the ALJ need not accept a physician's opinion that is "inadequately supported by clinical findings"). A reasonable reading of the ALJ's opinion, therefore, is that Plaintiff's subjective statements were at least partially responsible for the diagnoses of fibromyalgia.[1] (R. at 19–20.)

Furthermore, even if Plaintiff's fibromyalgia, standing alone, was a severe impairment at step two, the error was harmless. The ALJ found that Plaintiff did have severe impairments, at least when considered in combination with each other, and then the ALJ continued the sequential evaluation process by finding that Plaintiff's fibromyalgia and other alleged impairments were not disabling at step four. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that a failure to list an impairment is harmless error if the ALJ discusses the impairment later in the sequential evaluation). In particular, Dr. Cunningham, who diagnosed Plaintiff with fibromyalgia, also concluded that Plaintiff could perform light work. (R. at 19.) In other words, it is plausible that, even if Plaintiff had fibromyalgia, her medical records and subjective statements were insufficient to demonstrate that the fibromyalgia was disabling.

### B. Blood Clot

Contrary to Plaintiff's assertion, the ALJ mentioned Plaintiff's blood clot impairment, noting a "history of [deep vein thrombosis]" that was "stable" and being treated with medication. (R. at 18–19); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that successful treatment weighs against a finding of a disabling impairment). The

---

[1] To the extent other physicians noted fibromyalgia, Plaintiff does not challenge the ALJ's rejection of those findings; and, in any event, upon review of the record, substantial evidence supports the ALJ's stated reasons for rejecting these findings of fibromyalgia because they were based only on Plaintiff's subjective allegations and were not based on qualified physician knowledge. Plaintiff does argue that Mr. Nelson, a physician's assistant, diagnosed fibromyalgia. As discussed *infra* Section II, however, substantial evidence supported the ALJ's finding that Mr. Nelson's opinion was not entitled to significant weight because he was not an "acceptable medical source" capable of providing a diagnosis.

ALJ also noted Dr. Cunningham's diagnosis of Plaintiff with edema, (R. at 19), but the ALJ explained that Dr. Cunningham concluded that Plaintiff could perform light work activity, had no limitations on standing or walking, and displayed no significant physical limitations during the examination. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164–65 (9th Cir. 2008) (upholding a finding that an impairment was not severe where the record did not establish work-related limitations based on the impairment). Furthermore, Plaintiff's Brief also fails to provide any citation to the record or any detailed explanation of how her alleged blood clot was severe or in what way the ALJ's opinion was deficient. To the extent the ALJ's discussion at step two was insufficient, it was harmless error for two reasons. First, Plaintiff cannot identify how a more extensive discussion by the ALJ would have altered the result, especially given that the ALJ concluded that step two was satisfied. Second, as discussed above, the ALJ acknowledged Plaintiff's deep vein thrombosis and edema when concluding at step four that her RFC allowed her to return to her past work. *See Lewis*, 498 F.3d at 911 (discussing harmless error).

### C. Lower Back

Plaintiff contends that the ALJ did not properly evaluate her lower back impairment; however, the ALJ explicitly held that Plaintiff's "chronic low back pain" was severe when considered with her other impairments. (R. at 17.) To the extent Plaintiff argues that her lower back pain prevented her from working, the ALJ cited evidence from Dr. Cunningham (whose examination found degenerative disc disease) demonstrating that Plaintiff did not have cervical disc disease, showed no signs of upper back muscle spasm or atrophy, had no trouble standing or walking, and displayed no other significant physical limitations. (R. at 19); *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his [or her] credibility analysis.") Consistent with this evidence, Dr. Cunningham, as well as Dr. Holland, concluded that Plaintiff could perform light work despite her impairments. (R. at 19.) Plaintiff points to an x-ray and to Dr. Kapur's opinion

1 | that Plaintiff's back pain was severely limiting, but the ALJ explicitly acknowledged these
2 | findings and simply found other evidence more convincing. (R. at 19.)

## II. The ALJ Properly Discounted Mr. Nelson's Opinion.

Plaintiff contends that the ALJ erred by stating, "[Mr. Nelson is] not an acceptable medical source within the meaning of [20 C.F.R. § 404.1513(d)] and his observations are only entitled to the same degree of evidentiary weight as that of any other lay[person], such as a husband, sibling, or friend." (R. at 20.) Mr. Nelson, a physician's assistant, opined that Plaintiff had fibromyalgia and was incapable of working.

However, only "acceptable medical sources" can "establish the existence of a medically determinable impairment." Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (citing 20 C.F.R. § 404.1513(a)). Physician's assistants, like Mr. Nelson, are not "acceptable medical sources," but instead are only "other sources" of information, a category of information that also includes, *inter alia*, spouses, siblings, and friends. *Id.* Although these "other sources" can show the severity of a claimant's symptoms, they cannot establish a medically determinable impairment. *Id.* As discussed above, the ALJ held that none of the physicians, who were the only "acceptable medical sources" presented, issued a firm diagnosis of fibromyalgia. (R. at 18–19.) Therefore, the ALJ correctly declined to consider Mr. Nelson's opinion regarding whether Plaintiff had severe fibromyalgia and properly compared Mr. Nelson's opinion to that of a husband, sibling, or friend.

To the extent Plaintiff argues that Mr. Nelson's opinion is relevant to whether Plaintiff's symptoms are severe enough to prevent her from working, the ALJ cites substantial contradicting evidence. For instance, as discussed above, Dr. Cunningham evaluated Plaintiff's physical abilities and concluded that she was capable of performing light work. (R. at 19.)

## III. The ALJ Gave the Treating Physicians' Opinions Appropriate Weight.

"The medical opinion of a claimant's treating physician is entitled to 'special weight.'" *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)). If, as here, another doctor counters the treating physician's

opinion, "the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record."[2] *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey*, 849 F.2d at 421 (quotation omitted). Even so, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957.

Plaintiff baldly asserts that the ALJ did not provide specific and legitimate reasons for rejecting the opinions of two treating physicians, Dr. Boor and Dr. Guice. (Dkt. # 9 at 13.) The Court rejects this assertion because Plaintiff cites no part of the record to support her arguments. *See Carmickle*, 533 F.3d at 1161 n. 2 (rejecting claimant's argument where he "failed to argue this issue with any specificity in his briefing").

Additionally, the ALJ provided specific and legitimate reasons for rejecting Dr. Guice's and Dr. Boor's findings. First, neither physician found tenderness at eleven or more trigger points to properly diagnose fibromyalgia. (R. at 19.) The ALJ also explained that neither physician is a rheumatologist with unique expertise. (*Id.*); *see Benecke v. Barnhart*, 379 F.3d 587, 594 n. 4 (9th Cir. 2004) (noting that "[s]pecialized knowledge" of a rheumatologist "may be particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community"). Furthermore, both physicians based their diagnoses mainly on Plaintiff's subjective descriptions and statements about her medical history, even though prior medical records did not support these findings.

---

[2] When a non-treating physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the non-treating physician's opinion is not substantial evidence on its own. *See Orn*, 495 F.3d at 632. If, however, the non-treating physician makes independent findings, then those independent findings are substantial evidence. *Id.* Nonetheless, the "substantial evidence" threshold necessary to reject the opinion of a treating physician can be reached by the opinion of even a non-examining physician in concert with an abundance of evidence in the record. *See Lester*, 81 F.3d at 831.

(R. at 19–20.) Dr. Guice also found that Plaintiff suffered from a number of other impairments, but the ALJ found that treatment had improved these conditions and that Dr. Guice placed no limitations on Plaintiff's RFC based on these impairments. (R. at 19); *see Tommasetti*, 533 F.3d at 1040 (holding that treatment may negate a finding of a disabling impairment).

## CONCLUSION

Substantial evidence supports the ALJ's finding that Plaintiff is not entitled to disability insurance benefits.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of the Court is directed to terminate this action.

DATED this 15th day of April, 2010.

G. Murray Snow
United States District Judge